Apryl **FULLER** Plaintiff

v.

Jo Anne B. **BARNHART**, Commissioner, Social Security Administration Defendant

No. 4:03CV00460.

United States District Court, E.D. Arkansas, Western Division.

July 28, 2004.

David R. Trussell, Esq., Nussbaum, Hendrix, Trussell & Cockrill, Little Rock, AR, for Plaintiff.

Stacey Elise McCord, Esq., Assistant U.S. Attorney, U.S. Attorney's Office, Eastern District of Arkansas, Little Rock, AR, for Defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Pending before the Court are the proposed findings and recommended disposition of the Magistrate Judge regarding the

final decision of the Commissioner of Social Security Administration denying plaintiff's claim for Disability Insurance benefits.

After carefully reviewing the record, the Court is unable to accept the proposed findings and recommended disposition of the Magistrate Judge which, in essence, affirms the denial of benefits to the plaintiff. The Court is persuaded that the decision of the Administrative Law Judge (ALJ) is not supported by substantial evidence and that the case should be remanded for a proper and objective reconsideration of the evidence submitted in this action and particularly the subjective allegations of plaintiff regarding non-exertional problems as well as the testimony of plaintiff's mother in support of plaintiff's subjective allegations.

Plaintiff testified, during the hearing held by the ALJ, that she was 42 years of age, and that she attended college for two and one-half years and obtained a license as a licensed psychiatric technician nurse. Plaintiff further testified that she was employed at a psychiatric hospital and a group home, where she performed nursing duties; that her last regular full-time employment was with Bridgeway; that she was terminated at Bridgeway because of excessive absences because "I'm sick all the time."

Plaintiff testified that when it is "humid outside, I can't breathe" and further stating that when the weather gets "real cold, I go through periods I can't breathe". She stated that she was allergic to about every grass, tree, chemicals, cleaning fluids, dyes in clothes and in the carpet as well as perfumes. She testified that she visits her physician, Dr. Kfizer, on an annual basis to deal with her allergy; that she has had these allergy problems "[a]ll my life . . . . [t]hey've been getting worse the last six years"; and that given the fact that she does not have health insurance coverage, she can't afford her medications and is required to participate in a medicine program. Plaintiff further states that she has been on steroids off and on since she was 18 or 19 years of age; that she takes claritin and, whenever having a problem breathing, she participates in updraft machines which varies from three to four times a week and on occasions, three or four times during the day or whenever needed; and that she has sleeping problems because she wakes up when she can't breathe properly.

Plaintiff's mother, Virginia Rolsey, testified that she visits with her daughter approximately once a week and sometimes twice a month; that she is familiar with the problems that plaintiff has; that plaintiff was sickly when she was a child and that her problems appear to be getting worse year after year; that whenever plaintiff has an asthma attack, she has difficulty breathing and that she has "memory loss for periods [and] the steroids seem to be driving her crazy" and that the steroids have an effect on her behavior.

A medical report under date of December 2, 2002, by Dr. Martin Fiser, M.D. who is associated with the Arkansas Allergy and Asthma Clinic states, among other things, regarding plaintiff:

Apryl Fuller was seen for allergy review. She has a long history of allergic asthma, chronic rhinitis and sinobronchitis. She is not on immunotheraphy. The last three weeks she has had cough, congestion, green-brown colored mucus production and wheezing. She had her last updraft at 6:00 this morning. She has required steroids in small amounts four or five times a year. She is very sensitive to scents or when outside exposed to pollens, especially grass. At home, there are no smokers. A cat is inside. She avoids cantaloupe, bananas

and melons in the diet. She continues to have gerd.[1] She has not been hospitalized recently.

. . . .

PHYSICAL EXAMINATION: The weight is 204 pounds, the blood pressure is 168/108 (elevated). The lungs have bilateral rhonchic with scattered wheezes. (TR. 242)

In a medical document dated December 6, 2001, Dr. Fiser advises plaintiff's physician, Dr. James G. Throneberry:

We have had the opportunity of seeing your patient, Ms. Apryl Fuller, for allergy review. She is now a 41 year old female with a long history of chronic, persistent asthma and rhinosinusitis. She has had a recent flare-up of her asthma and congestion with a cough and mucus plugging. She had been on Prednisone for a few days and seemed a bit better. Ms. Fuller is not as symptomatic as she was in December of last year when she was hospitalized with pneumonia and asthma. Her reflux continues to be a problem. She quit smoking twelve months ago.

. . . .

PHYSICAL EXAMINATION: On physical exam, Ms. Fuller has bilateral expiratory and inspiratory wheezes. (TR. 252)

The ALJ, after invoking the five-step analysis prescribed by the Regulations (See: 20 C.F.R. § 404152.0), made, among others, the following findings:

The claimant has retained the residual functional capacity to lift-carry and push-pull up to 50 pounds occasionally and 25 pounds frequently, with the ability to stand and/or walk six hours in an eight hour work day. Additionally, the weight of substantial evidence supports a conclusion that claimant would have an inability to work around significant amounts of chemicals, dust and/or fumes. Further, she would have an inability to engage in any significant amount of outdoor work due to allergies to grass and trees. She should also avoid work around animals due to allergies.

. . . .

The claimant's history of medically determinable severe impairments associated with asthma and environmental allergies, a history of arthralgias and myalgias, a history of Type II diabetes mellitus/diet controlled, a history of hypertension and gastro esophageal reflux disease (GERD) and a history of benign uterine mass (status post total abdominal hysterectomy) do not prevent the claimant from performing her past relevant work activity.

The ALJ, therefore, rules that "the claimant is not entitled to a Period of Disability or Disability Insurance Benefits" under the Social Security Act. The Appeals Counsel declined review making the ALJ's decision the final decision of the Commission.

Plaintiff contends, in support of her request for reversal or remand, that the ALJ erred in finding that the testimony given by plaintiff as well as her mother regarding plaintiff's limitations are not totally credible; that the hypothetical question that the ALJ posed to the vocational expert was "flawed" inasmuch as the hypothetical question failed to mention restrictions concerning exposure to perfumes or colognes; and that the ALJ failed to give due weight and consideration to the opinions of the physicians who had treated plaintiff.

---

1. Gerd is abbreviation for gastro esophageal reflux disease. See: PDR Medical Dictionary, 2nd Edition.

■ The Court is persuaded that plaintiff's contentions are well taken. The first troublesome approach taken by the ALJ in analyzing the evidence, the ALJ noted that "[a]fter April 20, 2000, there is no evidence the claimant required any further specific treatment intervention related to allergies and/or asthma until December 22, 2000, when she was apparently admitted for hospitalization secondary to pneumonia and asthma symptoms". The inference flowing from the ALJ's finding is that plaintiff was free of any problems.

The evidence reflects that plaintiff did not have insurance coverage to pay for medical treatment and to acquire medication and, consequently, did not take steps to pursue medical treatment. Plaintiff testified that when her employment was terminated with Bridgeway, she lost her health insurance; that she was terminated because she was absent from work due to illness; and that due to the fact she didn't have health insurance coverage, she visited her physicians "[o]nce a year unless I'm having major problems; then contact them. They also have me in medicine programs because I can't afford my medicines".[2]

The Court is of the view that the communication sent by Dr. Fiser to Pfiser Pharmaceutical seeking assistance in providing medication to plaintiff due to the fact she was unemployed speaks volumes. The ALJ's failure to consider these circumstances objectively in reaching the conclusion that plaintiff was not seeking medical assistance because she did not have any medical problems, clearly supports plaintiff's contention that the ALJ did not give due consideration to the evidence submitted by plaintiff.

■ A treating physician's opinion addressing a physical limitation of a claimant is entitled to substantial weight. *See: Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir.1993).

■ The ALJ, in finding that plaintiff is not entitled to receive disability benefits, also made the following finding:

In addition, written evidence completed by the claimant dated September 18, 2001, Ms. Fuller reported the ability to remain active in several other routine and/or daily activities, including a reported ability to launder clothes, wash dishes, change the bed linens, take out the trash, shop for groceries, attend to banking and postal errands and prepare simple meals, including dishes that require the ability to read/follow a recipe .... The claimant also reported the ability to drive an automobile/even on an unfamiliar route and she indicated spending time watching television, listening to the radio, reading, working crossword puzzles and jig saw puzzles, listing to music, watching movies and playing cards and board games ....

SSR 96–7p provides the following relevant observation that should have been adhered to by the ALJ regarding the alleged inconsistencies of statements given by plaintiff:

[T]he lack of consistence between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the

---

**2.** Dr. Fiser, who was associated with the Arkansas Allergy and Asthma Clinic, sent the following communication dated June 10, 2002, to Pfiser Pharmaceuticals in Centerville, Virginia:

Ms. Fuller is a patient at Arkansas Allergy Clinic, P.A. who has allergic rhinitis and a long history of persistent asthma and rhino-

senusitis. She is currently unemployed and has no coverage for medication expenses. Therefore, she does have an annual income less than $12,000.00 per year. We would greatly appreciate your consideration of Ms. Fuller receiving zyrtec on your Prescription Assistance Program. (TR. 250).

individual's statements are not credible. Symptoms may vary in their intensity, persistence and functional effects or may worsen or improve with time, and this may explain why the individual does not always alleged the same intensity, persistence or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effect.

SSR 96–7p also emphasizes:

[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated solely by objective medical evidence.

. . . .

The individual's daily activities may be structured so as to minimize symptoms to tolerable level or eliminate them entirely avoiding physical or mental stressors that would exacerbate the symptoms.

■ In rejecting the testimony of Virginia Rolsey, plaintiff's mother, the ALJ observed that "the testimony of Ms. Rolsey, for the most part, merely corroborated the testimony of the claimant regarding the severity and nature of her symptoms and appeared to be based on an uncritical acceptance of her complaints and a desire to see her receive benefits".

The mother testified that she visited plaintiff sometimes once a week and on some occasions, twice a month, but emphasized that she was aware of plaintiff's problems; that plaintiff's condition seems to be getting worse and that plaintiff suffered from allergies and asthma since she was a child. The mother further testified that "[s]he has memory loss about as bad as mine . . . . The steroids seem to be driving her crazy".

Significantly, the mother alluded to the possibility of a disease that was transmitted from parent to offspring given the fact that the mother stated that she suffers memory loss. Surely, the mother would not let the "desire to see [plaintiff] receive benefits" motivate her to place such a stigma and aspersion on her ancestry and family roots. In substance, an adjudicator should not engage in speculation and conjecture in analyzing the issue of credibility. Indeed, the mother could have been requested to submit evidence regarding her medical condition inasmuch as the mother opened the door by stating she has a memory problem similar to plaintiff's.

■ The ALJ noted that "[t]he impartial vocational expert testified that based upon the claimant's residual functional capacity . . . the claimant could return to her past relevant work. . . . "

The vocational expert's testimony was in response to the following hypothetical question, in relevant part, posed by the ALJ:

. . . Further assumed an inability to work around significant amounts of chemicals, dust, fumes, no significant amount of outdoor work due to allergies to grass and trees, and no work around animals due to allergies. Based on these limitations, could such an individual return to any of Ms. Fuller's past relevant work?

As argued by plaintiff, the ALJ's hypothetical question posed to the vocational expert was "flawed". The hypothetical question failed to mention restrictions to perfumes or colognes. In addition, it did not include the loss of memory and erratic behavior on the part of plaintiff when plaintiff consumed steroids as related by the plaintiff's mother's testimony.

Given the circumstances addressed by the Court, the Court is not persuaded that

the ALJ's decision is supported by substantial evidence.

Accordingly, the ruling of the Commissioner is reversed and the matter is remanded for a proper reconsideration of plaintiff's subjective allegations. This is a "Sentence Four" remand within the meaning of 42 U.S.C. § 405(g).